IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| Tina M. Isaacs | : | Chapter 13 |
| Frederick S. Isaacs | : | |
|     Debtors | : | Case No. 1:18-bk-01651-HWV |
| | : | |
| Charles J. DeHart, III | : | Objection to Chapter 13 Plan |
| Standing Chapter 13 Trustee | : | |
|     Movant | : | |
| | : | |
| vs. | : | |
| | : | |
| Tina M. Isaacs | : | |
| Frederick S. Isaacs | : | |
|     Respondents | : | |

**<u>Opinion</u>**

      This case involves Chapter 13 debtors whose combined income exceeds the applicable median income. Because of this the court may not approve their chapter 13 plan over the objection of the chapter 13 trustee unless the plan pays 100% of all allowed unsecured claims or it pays all the Debtors' "projected disposable income" to unsecured creditors. The Debtors are not proposing a 100% plan. Therefore, the Debtors must devote all their projected disposable income to the payment of their unsecured creditors pursuant to 11 U.S.C. §1325(b)(1)(B)[1] for their plan to be confirmable over the objection of the Trustee. Importantly, the Code excludes "benefits received under the Social Security Act" from the calculation of disposable income. In this case the Debtors argue that payments they receive under the Adoption Assistance and Child Welfare Act of 1980 (the "Act of 1980") are benefits received under the Social Security Act and should therefore be

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Code")

1

excluded from their calculation of disposable income. The Chapter 13 Trustee disputes this and has objected to confirmation of the Debtors' proposed plan.

## I. Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §1408.

## II. Factual Background and Procedural History

The facts of this case are not complicated and are not in dispute. According to a stipulation of facts jointly filed by the parties, the Debtors receive $2,325.00 per month in adoption assistance payments (the "Adoption Assistance Payments") under the Act of 1980. The Act of 1980 establishes a program of federal payments to participating states to provide funds for financial assistance to families adopting special needs children from foster care (the "Adoption Assistance Program"). *See* 42 U.S.C. §§670–76. Pursuant to the Adoption Assistance Program, Pennsylvania receives funds from the federal government under Title IV–E of the Social Security Act ("SSA"). Each year, the U.S. Department of Health and Human Services calculates the Federal Medical Assistance Percentage ("FMAP"). The FMAP is used to determine the amount of federal matching funds provided to various subsidy programs, including the Adoption Assistance Program. The Adoption Assistance Payments are then paid from a pool of federal funds allocated to Pennsylvania to pay individuals who qualify under the Adoption Assistance Program. *See* Pa. Code §§3140.201–3140.210. In this case, the money allocated to fund the Debtors' Adoption Assistance Payments, as well as all other individuals receiving the same benefits, were comprised of 51.82% federal funding, 38.54% state funding, and 9.64% county funding. The Debtors'

2

payments under the Adoption Assistance Program are paid directly by Cambria County Children and Youth Services, not by the federal government.

The Debtors filed a chapter 13 petition on April 22, 2018. They disclosed the Adoption Assistance Payments but took the position that those payments were not included in their disposable income calculation on their form 122C (the "Means Test"). They have proposed a chapter 13 plan with a monthly payment of $548.00, which according to the claims register will pay approximately 21% to unsecured non-priority creditors.[2] Charles J. DeHart, III, the standing chapter 13 trustee, objected to confirmation of the plan contending that it was improper to exclude the Adoption Assistance Payments from the Debtors' disposable income when calculating their plan payments.

Argument on this matter was heard on March 7, 2019, at which time a briefing schedule was set. The parties have submitted their briefs and this matter is now ripe for a decision.

### III. Discussion

The issue here is whether the Adoption Assistance Payments received by the Debtors are "benefits received under the Social Security Act" within the meaning of §101(10A)(B) and are thus excludable from the calculation of the Debtors' "current monthly income." If they are, then they are likewise excludable from the calculation of the Debtors' "disposable income" under §1325(b)(2) and the Debtors' "projected disposable income" for purposes of §1325(b)(1)(B). Under §1325(b)(2), the term "disposable income" means "current monthly income" received by the debtor, less certain expenses detailed in §1325(b)(2)(A) and (B). *See* 11 U.S.C. §1325(b)(2). Section 101(10A)(B), in turn, defines "current monthly income" as "the average monthly income from all sources that the debtor receives" during a specified time period, but specifically "excludes

---

[2] Calculation based on this court's reading of the claims register and Plan.

3

Case 1:18-bk-01651-HWV    Doc 59    Filed 08/26/19    Entered 08/26/19 12:37:27    Desc
Main Document    Page 3 of 11

benefits received under the Social Security Act" (the "SSA Exclusion"). 11 U.S.C. §101(10A)(B). Finally, although "projected disposable income" is not defined by the Code, it is generally understood to mean "disposable income" multiplied by the "applicable commitment period," both of which are defined by the Code, and adjusted for any "known or virtually certain" changes to a debtor's income or expenses over the same period. *See* §§1325(2) and 1325(b)(4); *see also Hamilton v. Lanning*, 560 U.S. 505, 517 (2010). Each of the above definitions provide a critical context for the following analysis.

The first canon of statutory interpretation is that a court must begin, and where appropriate end, with the statutory language. "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (internal citations and quotations omitted). When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *Id.* Where a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations omitted). To determine whether language is unambiguous, courts should "read the statute in its ordinary and natural sense." *Id.* (citing *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d Cir. 2009). A statutory provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *Id.* (citing *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n. 27 (1985))).

Courts have construed the SSA Exclusion in different ways. The United States Bankruptcy Court for the District of Massachusetts, for example, has held that unemployment compensation

is excluded from current monthly income because unemployment compensation is a benefit received under the Social Security Act. *In re Munger,* 370 B.R. 21, 23–26 (Bankr. D.Mass. 2007). The United States Bankruptcy Court for the Southern District of Ohio came to the same conclusion, noting that §101(10A) "does not speak of 'payments,' direct, indirect, or otherwise, but instead contains the unambiguously broader term 'benefits.'" *In re Sorrell,* 359 B.R. 167, 180–81 (Bankr. S.D. Oh. 2007) (citing 11 U.S.C. §101(10A)). These decisions stand in contrast with a previous decision of this court holding that unemployment compensation is not excluded from a debtor's current monthly income because unemployment compensation is not a "benefit" received under the Social Security Act, but is received instead under a state-run program. *DeHart v. Baden (In re Baden),* 396 B.R. 617, 621–23 (Bankr. M.D. Pa. 2008). Likewise, the United States Bankruptcy Court for the Central District of Illinois has held that unemployment compensation is not excluded from current monthly income, stating that §101(10A)(B) "is ambiguous on its face, as it is amenable to two conflicting interpretations." *In re Kucharz,* 418 B.R. 635, 640–43 (Bankr. C.D. Ill. 2009).

These cases, however, do not deal directly with the Adoption Assistance Program at issue here and the court is therefore not persuaded by their holdings. The decision most directly on point, and the one adopted by the court here, is *In re Adinolfi*, 543 B.R. 612 (B.A.P. 9th Cir. 2016). In *Adinolfi*, the debtor filed a voluntary chapter 13 bankruptcy petition at a time when she received $1,422.00 each month in adoption assistance payments under the Act of 1980. She disclosed the payments but took the position that they were excludable from her calculation of disposable income. Consequently, the debtor in *Adinolfi* proposed a chapter 13 plan that provided no distribution to her unsecured non-priority creditors. The chapter 13 trustee objected to confirmation of the debtor's proposed plan contending that it was improper to exclude the adoption

5

Case 1:18-bk-01651-HWV    Doc 59    Filed 08/26/19    Entered 08/26/19 12:37:27    Desc
Main Document    Page 5 of 11

assistance payments from her income when calculating her plan payments. The United States Bankruptcy Court for the Eastern District of California sustained the objection of the chapter 13 trustee, concluding that the adoption assistance payments should have been included in the debtor's calculation of disposable income. The debtor timely appealed the bankruptcy court order denying confirmation of her plan to the Bankruptcy Appellate Panel ("BAP") for the Ninth Circuit. The BAP reversed the bankruptcy court's order and remanded the case for further proceedings.

The BAP in *Adinolfi* began its analysis by noting that a bankruptcy court cannot confirm a chapter 13 plan unless the plan meets numerous requirements. One of these requirements, according to the BAP, is described in §1325(b)(1) which provides that a court may not confirm a plan over the objection of the trustee (or an unsecured creditor) unless the plan provides for full payment of all unsecured claims or "the plan provides that all of the debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1)(B). The BAP in *Adinolfi* then traced the definition of the term "projected disposable income" in §1325(b)(1)(B) through "disposable income" in §1325(b)(2) to "current monthly income" in §101(10A) in order to reach the SSA Exclusion at issue in §101(10A)(B).

After defining the relevant terms and linking them appropriately to the SSA Exclusion, the BAP in *Adinolfi* examined the individual words making up the SSA Exclusion to determine if they were reasonably susceptible of different interpretations. The BAP quickly determined that the word "benefits" was not a problem as no one in the case had denied that the adoption assistance payments were truly benefits. Likewise, the BAP decided that the word "receives" presented no difficulty because no one in the case had denied that the adoption assistance payments were benefits and that the debtor in that case had indeed received them as such. The BAP in *Adinolfi* did pause, however, on the word "under" by acknowledging that it had many meanings. It swiftly

6

concluded, though, that most of the meanings could be rejected as being nonsensical within the context of its use. The BAP then concluded that the meaning that made the most sense in context was "subject to the authority, control, guidance, or instruction of." *Adinolfi*, 543 B.R. at 616 (citing Merriam-Webster's Collegiate Dictionary 1283 (10th ed. 2002)). Next, the BAP in *Adinolfi* engaged in an extensive examination of the meaning of the words "Social Security Act," which included a brief review of the historical background and development of Social Security. As part of its analysis, the BAP summarized more than 18 programs operated pursuant to the Social Security Act, including the Adoption Assistance Program. *Id*. at 616–619. The self-described purpose of the examination was "to emphasize the wide variation in the programs authorized by the SSA and to demonstrate the futility of picking and choosing which programs are 'under' the SSA" for purposes of the SSA Exclusion. *Id*. at 616. After completing this analysis, the BAP in *Adinolfi* concluded that "the 'Social Security Act' encompasses a wide spectrum of programs. Most of the programs involve some degree of state participation, and the extent of the states' involvement varies widely from program to program." *Id*.

Following its examination of the component terms of the SSA Exclusion, the BAP in *Adinolfi* reconstructed the phrase "benefits received under the Social Security Act" using the meaning of each of those terms. In so doing, the BAP in *Adinolfi* concluded that the most natural reading of the phrase was "benefits received subject to the authority of, and in accordance with, 42 U.S.C.A. §§301–1397mm." *Id*. at 619. Based upon this reconstructed reading of the SSA Exclusion, the BAP in *Adinolfi* concluded that the adoption assistance payments "received by the [d]ebtor are paid out by the county government, but are subject to the federal program requirements and standards of 42 U.S.C.A. §§670-679c and federal oversight." *Id*. Thus, under the BAP's reading of the SSA Exclusion in *Adinolfi*, "the Adoption Assistance payments which the [d]ebtor

7

receives are 'benefits received under the Social Security Act' and are excluded from her 'current monthly income.'" *Id.* The BAP for the Ninth Circuit then reversed the bankruptcy court's order denying confirmation of the debtor's chapter 13 plan and remanded the matter for further proceedings consistent with its opinion.

The present court agrees with the analysis and conclusions of the BAP in *Adinolfi*. Just like the BAP in that case, this court begins with an examination of the individual words in the SSA Exclusion, and then turns to the phrase as a whole. As was the case in *Adinolfi*, the word "benefits" does not present a problem for the court here. No one denies that the Adoption Assistance Payments which the Debtors receive here are advantageous or helpful to them. The word "received" in the context of its use here also presents no difficulty for this court. Like the debtor in *Adinolfi*, there is no question that the Debtors here acquired or otherwise came into the possession of the Adoption Assistance Payments. Regarding the word "under," which can have multiple meanings, this court concurs with the BAP in *Adinolfi* and finds that most of those meanings can be rejected as nonsensical given the context and use of the word as it appears in the SSA Exclusion. Like the BAP in *Adinolfi*, this court concludes that the only meaning of the word "under" that makes sense here is "subject to the authority, control, guidance, or instruction of." *Id.* at 616 (citing Merriam–Webster's Collegiate Dictionary 1283 (10th ed. 2002)). Importantly, the definition adopted here does not support the proposition that "under" means that the subject is under the *exclusive* control of something.

Next, this court turns its attention to the words "Social Security Act" as they appear in the SSA Exclusion. Not surprisingly, this court adopts the *Adinolfi* analysis regarding this term. As noted by the BAP in that case, the Social Security Act is codified at 42 U.S.C.A. §§ 301– 1397mm. It was enacted in 1935 and has been amended many times since then. Significantly, and as

8

Case 1:18-bk-01651-HWV    Doc 59    Filed 08/26/19    Entered 08/26/19 12:37:27    Desc
Main Document      Page 8 of 11

observed by the BAP in *Adinolfi*, the Social Security Act provides for the funding and oversight of many benefit programs, including the Adoption Assistance Program at issue here, with a huge variety of funding formulae and administrative mechanisms. The BAP's examination of various programs operated pursuant to the Social Security Act demonstrates that the federal government funds and administers some of the programs itself, though most of the programs contemplate some degree of state involvement. Importantly, many of the SSA programs, including the Adoption Assistance Program, are jointly funded and operated by both the federal and state governments. *Id.* at 619.

Having considered the individual terms contained in the phrase "benefits received under the Social Security Act," the court now returns to the entire phrase. Like the BAP in *Adinolfi*, this court concludes that the most natural reading of this phrase is "benefits received subject to the authority, control, guidance, or instruction of 42 U.S.C.A. §§ 301–1397mm." The Adoption Assistance Payments received by the Debtors in this case, though paid to them by the county government, remain subject to the federal program requirements and standards of 42 U.S.C.A. §§670–679c and federal oversight. Therefore, under this court's reading of the phrase, the Adoption Assistance Payments that the Debtors receive in this case are "benefits received under the Social Security Act" and are therefore excluded from their "current monthly income." Because they are excluded from their current monthly income, they are likewise excludable from the calculation of the Debtors' "disposable income" and by extension, from their "projected disposable income."

The Trustee here has advanced several arguments against construing the SSA Exclusion to exclude the Adoption Assistance Payments. These arguments include the assertions that: (1) a narrow interpretation of the SSA Exclusion is more consistent with the purpose of the Bankruptcy

9

Abuse Prevention and Consumer Protection Act of 2005, which incorporated the SSA Exclusion into Title 11 of the United States Code;[3] and (2) the "means test" should be broadly interpreted in order to effectuate its designed purpose, which is to "to ensure that [debtors] repay creditors the maximum they can afford" and to "reflect a debtor's ability to afford repayment."[4]

These arguments overlap with those set forth by the chapter 13 trustee in *Adinolfi*, and this court overrules the Trustee's arguments here for the same reasons set forth in that decision. Each of these arguments boil down to the proposition that when Congress referred to "benefits received under the Social Security Act," in §101(10A)(B) it really meant only benefits received under some of the SSA programs, but not all. However, as noted by the BAP in *Adinolfi*, when Congress referred to the "Social Security Act" as a whole in that section, Congress knew of the many differences between and nuances in the individual SSA programs, including the Act of 1980 and the Adoption Assistance Program. Nothing in the language of the SSA Exclusion suggests that Congress intended to include only those programs that are funded and administered solely by the federal government. Presuming that Congress "says in a statute what it means and means in a statue what it says there," this court concludes that the failure to include such language was intentional.

Accepting the Trustee's arguments here would create arbitrary and unworkable distinctions not supported by the language of the statue and would amount to an impermissible rewriting of same. Therefore, to the extent that the Trustee here has raised additional arguments consistent with those raised by the trustee in *Adinolfi*, this court rejects those arguments for the reasons set forth therein. Also, and for the reasons set forth herein, the court rejects any case cited by the Trustee inconsistent with the findings and conclusions of the court in this Opinion.

---

[3] *See* Trustee's Br. 7, ECF No. 53.
[4] *Id*.

10

Case 1:18-bk-01651-HWV    Doc 59    Filed 08/26/19    Entered 08/26/19 12:37:27    Desc
Main Document    Page 10 of 11

## IV. Conclusion

For the reasons set forth above, this court holds that the Adoption Assistance Payments that the Debtors receive in this case are "benefits received under the Social Security Act" and are therefore excluded from their "current monthly income." Because they are excluded from their current monthly income, they are likewise excludable from the calculation of the Debtors' "disposable income" and by extension, from their "projected disposable income." Because of this, the Trustee's Objection to confirmation of the Debtors' Chapter 13 Plan must be overruled.

An appropriate order will follow.

Dated: August 26, 2019

By the Court,

Henry W. Van Eck, Bankruptcy Judge (JH)

11